HUBERT CARR, Appellee, v. JOHN McCAULEY et al., Defendants; FRANK McCAULEY, Appellant.

No. 41574.

NOVEMBER 22, 1932.

T. H. Carolan and Hayes & Dahlen, for appellant.

Carr & Carr and Longley, Ransier & Frank, for appellee.

KINDIG, J.—John McCauley, Sr., at the time of his death, owned the real estate in question. In the year 1922, he died intestate survived by eleven adult children. There being no surviving widow, each of the eleven children inherited from their father, John McCauley, Sr., an undivided one-eleventh interest in and to the above named real estate.

Included among the surviving children of John McCauley, deceased, were Thomas J. McCauley, Henry McCauley, and Frank McCauley, the defendant-appellant. Thomas J. McCauley, above-named, is the husband of Alma McCauley, who materially figures in the quiet title and partition proceedings now under consideration.

On December 2, 1924, Thomas J. McCauley, for the purpose of placing his undivided one-eleventh interest in said land beyond the reach of his creditors, executed a quit-claim deed to his brother Henry McCauley purporting to convey the property to such alleged grantee. At the time the quit-claim deed transaction thus took place, Thomas J. and Henry McCauley entered into a written contract for the purpose of evidencing the fact that the title to the one-eleventh interest in the land in truth remained in Thomas J. McCauley and would be reconveyed to him by Henry unless certain creditors filed claims.

The above mentioned Thomas J. McCauley, on August 23, 1927, sold, assigned, and transferred to his wife, Alma McCauley, his right, title, and interest in and to the aforesaid contract. So far as appellant is concerned, the above-named condition (assuming, without deciding, that the alleged condition is such in law or equity), under the facts of the record, as hereinafter set forth, in no way prevent the return of title from Henry to Thomas J. McCauley.

Mrs. Alma McCauley, in turn, on October 17, 1930, conveyed the real estate in question by warranty deed to E. M. Carr, who thereafter, by warranty deed, transferred the property to the plaintiff-appellee Hubert Carr on July 22, 1931. Both warranty deeds were duly filed for record.

On August 10, 1931, the appellee commenced the present proceedings against John McCauley, Jr., Frank McCauley, Peter McCauley, Margaret Thyne, Mary Donlan, Sarah McCauley, and Winneshiek County State Bank, for the purpose of :First, quieting title in himself to the undivided one-eleventh interest in the real estate named in the above described deeds; and, second, partitioning the whole real estate. Whereupon, the appellant Frank McCauley appeared in said cause and filed answer claiming title to the said real estate through the aforesaid, and another, quitclaim deed, to wit: Thomas J. McCauley, above-named, on December 2, 1924, for the alleged purpose of placing the property beyond the reach of his creditors, executed, as previously stated, the quitclaim deed before mentioned for the undivided interest in the realty in question to his brother, Henry McCauley. Then on October 29, 1925, Henry McCauley, for the alleged purpose of securing a $1,000 indebtedness, conveyed (in violation of the before mentioned contract dated December 2, 1924) the aforesaid interest in the real property to

the appellant Frank McCauley. Frank McCauley claims not to have known at the time that Thomas J., and not Henry, owned the one-eleventh interest in the real estate.

It is to be noted that both deeds in appellant's chain of title are alleged to have been executed before any deed in appellee's chain of title. Consequently, it is argued by the appellant that his title is superior to that of appellee because when the latter's deeds were executed Thomas J. McCauley and the subsequent grantors under him had no interest in the land under consideration.

The district court, however, found for the appellee, quieted title in him to the undivided one-eleventh interest, and ordered the partition of the entire tract. From that judgment and decree, the appellant appeals.

I. A petition was first filed by the appellee. By way of answer to that petition, the appellant made certain admissions and denied all other allegations therein contained. In his prayer to the answer, the appellant not only asked that appellee be given no relief under his petition, but in addition thereto affirmatively prayed for such further equitable relief as might seem just to the court. Responding to that answer, the appellee in a reply pleaded that on July 24, 1930, the appellant for a valuable consideration contracted with the aforesaid Alma McCauley that he had no interest in the aforesaid land. Likewise it was agreed in that contract between appellant and Alma McCauley that the quitclaim deed December 2, 1924, from Thomas J. McCauley to Henry McCauley, and the quit-claim deed of October 29, 1925, from Henry McCauley to appellant, before mentioned, were to be treated as void and of no validity whatever. Therefore the appellee further pleaded in the reply that because of the foregoing contract and his reliance thereon, the appellant is estopped to now assert a superior interest in and to the above-named real estate. Thereupon the appellant moved to strike the aforesaid reply because it was not authorized under section 11156 of the 1931 Code. This motion was overruled by the district court, and the appellant alleges that he is entitled to a reversal on the ground that the motion should have been sustained.

Obviously the motion was indefinite and uncertain because the appellant did not state why the section of the statute referred to barred the filing of a reply. It is true that a counterclaim was not contained in appellant's answer. But when fairly construed, it is

evident that the appellant in his answer did ask for affirmative relief. Apparently feeling that the allegations in the answer supplemented by the statements in the petition entitled him to affirmative relief, the appellant prayed therefor.

Under all the circumstances, then, it cannot be said that the district court erred in failing to strike the reply from the files.

II. Because of the pleadings in this case, it is a little difficult to understand appellant's position on the merits. In paragraph four of appellee's petition, as set forth in the appellant's amendment to the abstract of record, appears the allegation that the latter "makes some claim [to the real estate under consideration] adverse to the title and interest of" the appellee. The appellant, when answering the petition, admits the allegations contained in paragraphs one and five, and certain allegations in paragraph two in reference to the defendant Winneshiek County Bank. All other allegations of the petition are expressly denied by the appellant's answer. Consequently, it is evident under the denials contained in the answer that the appellant does not admit that he claims an interest in or claim on or to the real estate in question, as alleged in paragraph four of appellee's petition. If that is true, the only remaining question is whether the appellee in his own right has the legal or equitable title to the real estate.

As before stated, appellee does have title to an undivided one-eleventh interest in the real estate in question through the following three conveyances:

First, the conveyance of August 23, 1927, from Thomas J. McCauley to his wife Alma L. McCauley.

Second: The conveyance of October 17, 1930, from Alma McCauley to E. M. Carr; and

Third: The conveyance of July 22, 1931, from E. M. Carr to the appellee.

That is true regardless of the conveyances under which the appellant claims, to wit, the one of December 2, 1924, from Thomas J. McCauley to Henry McCauley, and that of October 29, 1925, from Henry McCauley to appellant. According to the record, the transfer of December 2, 1924, from Thomas J. McCauley to Henry McCauley was without consideration and executed for the sole purpose of preventing creditors from making collections and levying execution on the property in question. Under the agreement of

December 2, 1924, Henry McCauley consented to return this property to Thomas J. McCauley under certain conditions. Those conditions, so far as appellant is concerned, did not prevent the vesting of title in the premises in Alma McCauley, who received an assignment from Thomas J. of his aforesaid contract of reconveyance with Henry. Nevertheless the appellant argues that he did not know of the purposes prompting the aforesaid deed when he received the quitclaim deed of October 29, 1925, from Henry McCauley.

Assuming, without deciding, that the appellant under the state of the pleadings is permitted to claim superior title to that obtained by the appellee through his chain of deeds, yet it is apparent that appellant is estopped from asserting his superior title through the execution of the contract named in appellee's reply. This contract was dated July 24, 1930, almost five years after the appellant is alleged to have received the above-named quitclaim deed from Henry McCauley. The contract was between Henry McCauley and the appellant Frank McCauley, parties of the first part, and Alma McCauley, party of the second part. In this contract there is set forth a recital of the conveyance by quitclaim deed from Thomas J. McCauley December 2, 1924, to Henry McCauley; and likewise the contract contains a recital of the conveyance of said interest in the land by quitclaim deed from Henry McCauley to appellant on October 29, 1925. Following those recitals, the contract then expressly declares that Alma McCauley is the owner of the real estate in question through the written contract dated December 2, 1924, between Henry McCauley and Thomas J. McCauley, which was assigned to her by Thomas J. McCauley on August 23, 1927.

Subsequent to these statements of fact, the parties then concede in the contract that Alma McCauley claims a one-eleventh interest in the real estate because of the foregoing assignment. All parties thereby acknowledged the validity of the contract of December 2, 1924, between Henry and Thomas J. McCauley, which, as before said, was assigned to Alma McCauley by Henry J. on August 23, 1927. By way of conclusion, then, the parties solemnly stipulate and agree:

"Now, therefore, it is hereby agreed, by and between the parties hereto [the appellant Frank McCauley, Henry McCauley, and Alma McCauley], that said parties of the first part [the appellant

Frank McCauley and Henry McCauley] have never claimed and never will claim any interest in the above described real estate under and by virtue of the quitclaim deed mentioned and described in said contract of December 2, 1924, nor under and by virtue of the said deed from Henry McCauley to said Frank McCauley [appellant] (October 29, 1925). That both of said deeds shall be treated as void and of no validity whatever."

As before explained, this contract was executed by Henry McCauley and appellant, as parties of the first part, and Alma McCauley, as party of the second part, on July 24, 1930. Thereafter, and it is fair to conclude from the record because of that contract, Alma McCauley, on October 17, 1930, executed the warranty deed to E. M. Carr for the premises. Also after the execution of the foregoing contract between Alma McCauley, Henry McCauley, and appellant on July 24, 1930; E. M. Carr transferred the premises by warranty deed to the appellee July 22, 1931. The appellant not only admits, but affirmatively argues, that appellee as well as E. M. Carr and Alma McCauley all knew of the aforesaid contract repudiating the quitclaim deeds in appellant's chain of title when the conveyances were made from Alma McCauley to E. M. Carr and from him to appellee.

It is fair to say, after considering all the facts and circumstances in the record, that Alma McCauley would not have conveyed the property by warranty deed to E. M. Carr and he would not have accepted that deed had it not been for the aforesaid contract repudiating the quitclaim deeds. So too it fairly appears from all the facts and circumstances in the record that E. M. Carr would not have conveyed the property by warranty deed to appellee, and the latter would not have accepted the same and made the expenditures shown, had it not been for the contract above-named which repudiates said quitclaim deeds. There is a presumption that the written warranty deeds to the Carrs are supported by a valuable consideration. Hiatt v. Hamilton, 215 Iowa 215. This is statutory. See Code section 9440, 1931 Code. Something was said by Alma McCauley while testifying that she had not been paid anything for the one-eleventh interest deeded to Mr. Carr. That testimony, however, is not enough to prove want of consideration. Millard v. Curtis, 208 Iowa 682. Such consideration may have been a promise to pay, a detriment, or one or more of many other things, as shown by the

Millard case. Lack or failure of consideration in these two warranty deeds is not pleaded nor proven. Therefore the statutory presumption must prevail. Hiatt v. Hamilton, supra.

█ Reference is made by appellant to a power of attorney between Alma McCauley and the above-named E. M. Carr whereunder the latter, as an attorney, was to recover for the former the title to the aforesaid one-eleventh interest in the land. The appellant concludes therefrom and from the other facts above recited that the Carr deeds were not bona-fide conveyances but only part of the scheme to obtain title under the aforesaid power of attorney. Hence the appellant argues that the appellee cannot avail himself of the estoppel claimed under the contract of July 24, 1930. For all that appears, the power of attorney between Alma McCauley and E. M. Carr may have been completely terminated when title for her was perfected by the repudiation of appellant's quitclaim deed through the before-mentioned contract signed by him July 24, 1930. That contract, no doubt, was obtained for Alma McCauley by E. M. Carr through the said power of attorney. Resultantly, so far as the record is concerned, after the completion of title through the repudiation contract, as aforesaid, the warranty deed may have been given by Alma McCauley to E. M. Carr, under a different and independent transaction, and likewise the warranty deed, under a different and independent transaction, may have been given by E. M. Carr to the appellee. In any event, a mere alleged inference not supported by substantial evidence cannot overcome the Carr deeds. The appellant, in other words, has not met the burden of proof necessary to overcome the presumption of consideration for the deeds afforded by the statute. What he may have proved in that regard we do not know. We are required to decide the case on what the appellant did or did not prove, as shown by the record.

█ But the appellant says that the contract of July 24, 1930, between Henry McCauley and the appellant, as parties of the first part, and Alma McCauley, as party of the second part, was obtained by fraud and is without consideration. This fact, the appellant declared, was known by the appellee when he took the above-named warranty deed from E. M. Carr. Neither fraud nor lack of consideration was pleaded. Therefore it is the contention of the appellee that the appellant cannot avail himself of that defense. The contract now declared by appellant to have been obtained by fraud

was set forth as an estoppel in appellee's reply. How, then, would appellant plead fraud or lack of consideration? Under the statute an answer to a reply is not contemplated. Would the appellant, then, under the circumstances, be compelled to amend his answer to the original petition and plead fraud and lack of consideration in relation to the contract set forth in appellee's reply? It is suggested in Sloanaker v. Howerton, 182 Iowa 487 (local citation 496), that an affirmative defense might be set up by a defendant in an amendment to his answer after the issue was raised by the plaintiff in a reply. But it was not said in the Sloanaker case that the defendant "must" thus amend his answer to set up an affirmative defense to matters set forth by the plaintiff in his reply. We said in Barger v. Farris & Wilmer, 34 Iowa 228, reading on page 230:

"The answer of the defendant contained matters of defense only. No set-off, counter-claim, cross-demand or cross-petition was interposed, and hence a reply on the part of the plaintiff was neither necessary nor proper. Rev., sec. 2895. Under our system of pleading [the one in force in 1872], when an answer contains new affirmative matter as a defense, an issue is formed thereon by operation of law, and the plaintiff may meet it by any evidence that will defeat its effect, either negative or affirmative, or both. For example, if the defendant pleads a release as a defense to the action, the plaintiff may prove either that no release was ever given, or that it was executed under duress, or obtained by fraud, or any other facts to defeat its effect. * * * Neither was it necessary for the plaintiff to amend his petition so as to set up fraud as a defense to the answer of the defendant. * * * The law supplies the appropriate pleading for the admission of any competent evidence, either negative or affirmative, tending to defeat the effect of new matter pleaded in the answer as a defense."

Whether the principle announced in the Barger case (34 Iowa 228), supra, under the statute in force at that time applies to new matter set forth in a reply, as contemplated by our present Code, and thereby enables a defendant to prove affirmative defenses without pleading the same by an amendment to his answer, we do not now decide. For the purposes of this case, however, it is assumed without deciding that the appellant in the case at bar had a right, under the pleadings, to prove that the contract of July 24, 1930, in which he and Henry McCauley repudiated, on behalf of Alma

McCauley, any interest in the real estate in question, was both fraudulent and without consideration.

The appellant, even though it were permissible for him to do so under the assumption above made, nevertheless failed to prove either fraud in obtaining the contract or lack of consideration therefor. Nowhere does it appear that the contract was obtained by deceit, subterfuge, underhandedness, misrepresentation, or fraud. It is presumed that there was a consideration for the written instrument. Hiatt v. Hamilton, supra. No serious attempt was made by the appellant to overcome the presumption. See Millard v. Curtis (208 Iowa 682), supra. We find, furthermore, that there is no substantial evidence in the record indicating a conditional delivery of the so-called repudiation contract. Although the appellant previously may have expressed the intention of retaining title under his quitclaim deed until he received certain moneys alleged to have been due him, he later, at the time of signing and delivering the so-called repudiation contract, obviously changed his mind and waived his former claim for the alleged security and money due. Evidently he now has assumed a contrary position, but this late change of front cannot affect the validity of the above-named repudiation contract and the rights of appellee to rely thereon. Naturally, then, the appellee could not know of an alleged conditional delivery, or the alleged fraud and a claimed lack of consideration which never, under the record, existed.

Not only did the appellant fail to prove fraud or lack of consideration, but on October 24, 1930, in a written agreement with E. M. Carr at a time when the latter owned the land in question, the former confirmed the above-named contract in another written agreement. In this last-named contract the appellant agreed to purchase from E. M. Carr the one-eleventh interest in the land under consideration on the basis of $1,800 in cash "if the other heirs" will pay "their share of said $1,800." This last-named contract negatives both fraud and lack of consideration in the contract of July 24, 1930, between the appellant and Henry McCauley, as parties of the first part, and Alma McCauley, as party of the second part.

Neither fraud nor failure of consideration is available to the appellant without the sustaining proof. See cases above cited. The appellant, in effect, conceded in the agreement with E. M. Carr,

dated October 24, 1930, that he signed the contract repudiating the quitclaim deeds, and again expressly admitted the same on the witness stand. All deeds and contracts, as exhibits, were properly admitted in the record. If the appellant does not carry out the contract in which he repudiates title under the quitclaim deeds, the appellee would be prejudiced because he relied on appellant's aforesaid contract, and therefore his title, through such breach of contract, will be placed in jeopardy. Under the circumstances, the appellant now is estopped from denying the contract and is bound thereby. 21 Corpus Juris 1110, Sec. 110; 10 Ruling Case Law 799, Sec. 111; Browning v. Kannow, 202 Iowa 465; Iowa State Bank of Hull v. Rons, 203 Iowa 51. See Citizens Sav. Bank v. Martens, 204 Iowa 1378; Knapp v. Baldwin, 213 Iowa 24. Hence the district court properly quieted title to the one-eleventh interest in the real estate in the appellee and ordered the entire tract partitioned subject to the mortgage of the Winneshiek County Bank.

Whether Henry McCauley, when he executed to appellant the quitclaim deed of October 29, 1925, had any title to convey because of the previous contract from Henry to Thomas J. McCauley, we do not now decide or suggest.

Wherefore, the judgment and decree of the district court is affirmed.—Affirmed.

STEVENS, C. J., and EVANS, BLISS, and CLAUSSEN, JJ., concur.