No. 35,566

HENRY A. RANKIN and ALICE R. RANKIN, *Appellants*, v. THE CENTRAL LIFE ASSURANCE SOCIETY (Mutual), and LUTHER HART, Sheriff of Barber County, *Appellees.*

(127 P. 2d 485)

Opinion filed July 11, 1942.

*Clyde Raleigh,* of Hutchinson, argued the cause, and *Leaford Cushenbery,* of Medicine Lodge, and *J. N. Tincher,* of Hutchinson, were on the briefs for the appellants.

*Horace H. Watkins,* of Dodge City, argued the cause, and *Albert Watkins,* of Dodge City, was on the briefs for the appellees; *Russell L. Hazzard,* of Dodge City, of counsel.

The opinion of the court was delivered by

SMITH, J.: This was an action in equity to enforce a contract for the redemption of real estate and to enjoin the execution and delivery of a sheriff's deed to the real estate. Judgment was for the defendants. Plaintiffs appeal.

The petition alleged all the facts with reference to an action by the defendant life insurance society against the plaintiffs in an action to enforce a mortgage; that a dispute arose over the amount due the society and this dispute was settled by the society admitting

in a letter that it had sued for $2,600 more than was due it; that counsel for the society further stated in this letter that the amount of the judgment was unimportant anyway, as the bid would be only $10,000 plus court costs and the 1939 taxes; that it was agreed between the parties that the company should take judgment in the sum of $12,181.66; that in consideration of this agreement the defendant company agreed that it would bid in the land at the sheriff's sale for the principal amount of $10,000 plus court costs and the 1939 taxes, or approximately $10,350; that it was further agreed that plaintiffs could redeem from the defendant company by paying that amount of money and there would be no deficiency judgment; that notwithstanding this agreement the company through its attorneys at the sheriff's sale bid in the land for the full amount of the judgment, costs and taxes, which amounted to $12,638.15; that on that account the plaintiffs in this action notified the company they would resist the confirmation of the sheriff's sale; that thereafter the society in consideration of having the sale confirmed agreed that the plaintiffs in this case could redeem from the sale for the sum of $10,386.75; and that the rest of the judgment would be released; that the plaintiffs relied upon that agreement and allowed the sheriff's sale to be confirmed; that while plaintiffs were making arrangements to finance the redemption the society through its agent notified plaintiffs they had given an option on the property to another party and that these plaintiffs would not be allowed to redeem the land from the sale; that the plaintiffs at all times acted in good faith and were willing to carry out the terms of their agreement, and tendered into the court the sum of $10,386.75 to redeem the land, as per the agreement; that the action was commenced on July 26, 1941. The petition further alleged that the redemption period would expire on August 1, 1941, and that unless the sheriff were restrained he would deliver a sheriff's deed to defendant society at that time; that plaintiffs had no adequate remedy at law and would suffer irreparable damage if the sheriff's deed were delivered before the matter could be adjudicated.

The prayer was that the society be directed to comply with the terms of the agreement and for an order allowing the plaintiffs to redeem in the sum of $10,386.75 and for a permanent injunction enjoining the society from attempting to secure a sheriff's deed and enjoining the sheriff from issuing a sheriff's deed to the land described.

Defendants filed a general answer in which they admitted the foreclosure of the mortgage and the sale of the real estate for $12,638.15, made a general denial and a further defense that the sheriff's deed had been executed and delivered to the society on September 19, 1941.

The reply of plaintiffs denied all new matter.

When the action was brought the probate judge issued a restraining order restraining the sheriff from executing and delivering a sheriff's deed.

On September 5, 1941, a motion of the defendants to dissolve this restraining order was heard by the district court. The restraining order was dissolved and an application for a temporary injunction was denied by the district court.

On November 7, 1941, the case came on to be heard upon its merits. The parties stipulated that it should be heard upon the evidence that was introduced at the hearing on the motion to dissolve the restraining order with the addition of some oral testimony by one of the counsel for the plaintiff. At the conclusion of this hearing the defendants demurred to the evidence of the plaintiffs upon the ground that it failed to establish a cause of action in favor of the plaintiffs. The parties took time in which to file briefs, and on December 4, 1941, the trial court made findings of fact and conclusions of law to the effect that there had been no valid agreement entered into between the parties as to the amount of the judgment or the amount for which defendants would be permitted to redeem; that there was no evidence as to any controversy between the parties concerning the amount, that if there had been any offers made by the society at the time of or prior to or subsequent to the foreclosure such offers had been withdrawn before they had been accepted by the plaintiffs in this action, and that the sheriff's deed, which the plaintiffs in this action sought to enjoin, had been issued before the trial was concluded.

The court as a matter of law held that the plaintiffs were not entitled to injunctive relief or any other relief—hence, this appeal.

The trial court made findings of fact and conclusions of law. The defendants did not introduce any evidence and did interpose a demurrer to the evidence of plaintiffs at the conclusion of taking plaintiffs' testimony. The evidence was practically all contained in letters exchanged between the parties and there was no substantial dispute in such oral testimony as was used. For that reason we

shall examine the record with the idea of ascertaining whether or not the findings were sustained by the evidence.

The action turns upon negotiations between the parties to an action to foreclose a mortgage as to the amount for which the land could be redeemed, which negotiations were begun shortly after the action was commenced and continued through the course of the action until the sheriff's deed was finally executed and delivered.

As has been the practice in so many cases to foreclose mortgages, the mortgagees, plaintiffs in this action, apparently saw they had no defense to the action and when it was begun immediately started looking to their right of redemption and toward the possibility of refinancing their loan. We have the opening paragraph of plaintiffs' exhibit 1, which is an answer to a letter written by counsel for the plaintiffs in this action, to prove this statement. At the outset it appears that there had been a misunderstanding about the interest payment on this loan and action had been brought for $2,600 more than was actually due the mortgagee. The court found that there was slight, if any, evidence as to such a controversy but the record discloses beyond any doubt whatever that the action was brought for $2,600 more than was due the mortgagee and that had this not been called to the attention of counsel for the society judgment would have been given the mortgagee in that amount. When the attention of the society was called to this it checked its records and found such to be the case. Just how it could be said there was no controversy between the parties on this point is difficult to see. The fact that the controversy was easily settled is no evidence that there had been none.

The defendants state that this letter, exhibit 1, did not constitute anything more than a statement of policy on the part of the society.

The letter is entitled to greater weight in the consideration of this case than that. Where negotiations between parties are carried on by writing and there are some oral transactions between the dates of the various writings this court will look to all of the writings which led up to the consummation of the contract and will consider the surrounding facts and circumstances as well as any oral testimony which throws a light on the question of whether or not a contract was entered into and as to its terms. See *Handrub v. Griffin*, 127 Kan. 732, 275 Pac. 196; *Kirk v. First National Bank*, 132 Kan. 404, 295 Pac. 703; and *Lucas v. Individual Mausoleum Co.*, 134 Kan. 266, 5 P. 2d 1077.

In this case the matter about which exhibit 1 was written in the first place was settled when the letter stated that the society would take judgment for $12,181.66 rather than $14,883, which was the amount asked for in the petition. The letter went further, however, and contained the following statement:

"This plaintiff has a peculiar way of bidding at sheriff's sales. In every case except one or two which we have conducted for it we have been instructed to bid the principal of the mortgage, taxes advanced and court costs, paying no attention whatever to accruing interest either before or after judgment. We see no reason why we should not be so instructed in this case and that would mean that the bid would be only $10,000 plus court costs and the 1939 taxes, and of course the redemption price would be fixed by the bid."

It is difficult to see under all the facts and circumstances why the above statement was not an offer on the part of the mortgagee to permit the land to be redeemed from sale in this case for $10,000 plus court costs and the 1939 taxes. No doubt the lawyers in this case knew that the amount necessary for redemption would be fixed by the bid that was made at the sheriff's sale. Added to this is the gratuitous postscript at the end of the letter as follows:

"We should have mentioned that it is also a part of the plaintiff's policy to release all deficiency judgment rendered in any foreclosure suit, and this is certain to be our instructions in this case."

The only fair interpretation placed upon such writing is that the society would permit the redemption to be made at that figure. This letter was written November 24, 1939, when the action had just been commenced. On March 25, 1940, the same counsel wrote counsel for the mortgagor that the bid would be for the amount for which suit was brought and costs. If this were all that happened between these parties this court would construe the above as a withdrawal of the offer before it was accepted, but on March 26 counsel for the mortgagor wrote counsel for the mortgagee referring to the offer that had been made in the previous letter, and on April 8, 1940, the counsel for the mortgagee having in the meantime had a consultation with the society, to which reference is made in the record, wrote in reference to the amount that would be necessary to redeem from the sale as follows:

"The amount named is $10,386.75, which is practically the identical amount the bid would have been upon the usual theory of the company. Upon this amount the company would expect payment of 10 percent interest from the date of sale, January 31, 1940, to the date of redemption."

At the time that letter was written the mortgagee had a certificate

of sale in its hands and the letter further stated that if the offer was to be given favorable consideration it should have a substantial deposit as earnest money, the balance to be paid in a reasonable time.

In addition to the above writings there was undisputed testimony by counsel for the plaintiffs and the agent of defendants as to various conferences between counsel for the parties in the action as to the details in which the agreement testified to should be carried out.

In addition there is undisputed testimony to the effect that on the day of the sheriff's sale counsel for the society told one of the mortgagors that they would be permitted to redeem at the lower price even though the land was bid in at the higher price.

A very persuasive bit of testimony is the testimony of the agents for the defendants that the plaintiffs would have been permitted to redeem as was agreed upon if the society had not received the cash offer for the land in question.

Finally on April 30, 1941, the society wrote plaintiffs as follows:

"This is to advise that this society has given an option to others to purchase the above-described land in event it is not redeemed by you folks. We will desire full and complete possession on August 1, 1941.

"I am advising you of this so in case you do not redeem you will have ample time to make arrangements in which to give possession."

There can be no other conclusion from this letter than that it was the intention of defendants even when the option had been given to the people who finally purchased the land that it was subject to plaintiff's right to redeem. At that time the offer to permit them to redeem by the payment of that amount of money, that is, $10,486.75, had not been withdrawn, even though on April 19 defendants had advised plaintiffs that they were dealing with a third party.

There are a number of letters which passed back and forth between counsel for both parties in this record. We have concluded, however, that the letters that defendant set out, as well as the undisputed oral testimony and all the surrounding facts and circumstances, establish that the defendant insurance company agreed with the plaintiffs that the land involved in the action to foreclose the mortgage could be redeemed from the sheriff's sale at the figure named, that is, $10,386.75.

The defendants argue that any order of this court would be of no effect since the sheriff's deed to the real estate in question has al-

ready been delivered and the land sold to a third party. This argument is not good, since the correspondence shows that the purchasers at the time of the purchase had actual notice of the negotiations that had been going on between plaintiffs and the society at the time of their purchase and the sheriff's deed was issued while this action was pending and all parties had notice of it.

The judgment of the trial court is reversed with directions to permit the plaintiffs to redeem this real estate from the sale on the payment of $10,896.75 at any time within ninety days from the date when the mandate in this action reaches the trial court, and if plaintiffs do redeem then to set aside the sheriff's deed.